MANHATTAN BOOK CASING MACH. CO. v. E. C. FULLER CO.

(Circuit Court of Appeals, Second Circuit. March 10, 1913.)

No. 138.

1. PATENTS (§ 167*)—REQUISITES AND VALIDITY—DRAWINGS—DISCLOSURE OF OPERATIVENESS OF DEVICE.

The drawings of a patent are often diagrammatic, and not drawn to a scale, and a patented device is not to be held inoperative merely because a slavish adherence to the drawings develops obstacles, which may in many cases be overcome by the exercise of common sense and ordinary mechanical skill.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 243; Dec. Dig. § 167.*]

2. PATENTS (§ 328*)—VALIDITY—INOPERATIVENESS—BOOKBINDING MACHINE.

The McClellan patent, No. 603,406, for a bookbinding machine, held void, because its disclosures do not teach those practicing the art how to make an operable machine.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

This cause comes here upon appeal from a decree of the District Court, Southern District of New York, dismissing a bill for infringement of patent.

The patent is No. 603,406, issued May 3, 1898, to Jackson McClellan for a bookbinding machine. It deals with that part of the process which covers the sides of a book, stitched and assembled, with glue and then places the cover of the book upon the sides after they are glued. The District Court held the patent void because its disclosures did not teach those practicing the art how to make an operable machine.

Sutro & Wright, of New York City (C. B. Mitchell, S. L. Moody, T. Sutro, and B. Wright, all of New York City, of counsel), for appellant.

J. Q. Rice and M. B. Philipp, both of New York City, for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. [1] Undoubtedly a patented device is not to be held inoperable because slavish adherence to the drawings develops obstacles. Such drawings are often diagrammatic, and rarely, we fancy, drawn to a scale. So, too, there are some difficulties which a court can see for itself may be remedied by the exercise of mere common sense. Thus, if a wheel which is to make a quarter revolution by the pull of a ratchet on teeth, is drawn with 17 teeth, it is manifest that an ordinary shopman would substitute 16 or 20 teeth. So, too, when necessary further movement in some direction is stopped by a straight bar coming into contact with part of the frame of the machine, common sense would indicate that the frame might be raised, or the bar, or frame, or both, notched or curved at the point of contact, so as to give sufficient clearance. There are such defects in a machine built in strict conformity to the drawings of this patent.

[2] But there are other defects pointed out specifically in the testimony of defendant's experts—for example, the blocking of the plate C, and the failure of the turning combination with chains and weights to effect revolution. Appellant insists that these are corrected in the so-called "operative drawings" annexed to his brief, and that the changes are such as an ordinary mechanic, building a machine with such instructions as the patent gave him, would make. Maybe this is so; but we are not skilled mechanics, and do not know it to be so. Therefore, when two experts say they can see no way to make the machine operable while sticking to the specifications, and making such departures from them and the drawings as a skilled mechanic would make, and the experts on the other side say there is nothing to indicate that their statements in that regard are erroneous, we do not see how the court can hold that this is what the skilled mechanic would do. Complainant's expert, on the prima facie, merely testified that a machine "with the parts constructed and proportioned as shown in the patent drawings and operating as described in the specifications of the patent" would be practically operable. It is now conceded that a machine constructed and proportioned as shown in the drawings would not be operable. When the same expert was recalled in rebuttal, after the experts for defendant had testified to inoperativeness, and had pointed

out what they said were defects, which the ordinary skilled workman would not correct, he testified merely that he had seen no reason to change his original opinion. He did not testify that the changes indicated in the so-called "operative drawings" and in the "illustrative model" produced on the argument here were such as the skilled workman would have made. We concur, therefore, with the District Judge, that the machine actually disclosed by the patent was inoperable. In doing so, however, we are not to be understood as assenting to the proposition, found in the opinion, that the complainant is estopped from contending that the changes necessary to be made in order to make the machine do its work were obvious, because the patentee subsequently took out a patent for improvements on his first patent, with which improvements it was operable.

Decree affirmed, with costs.