34 C.C.P.A.(Patents)

## In re MICHALEK.
### Patent Appeals No. 5317.

Court of Customs and Patent Appeals.
June 3, 1947.

230

Pennie, Edmonds, Morton & Barrows, of Washington, D. C. (Louis D. Forward, of New York City, and Clarence M. Fisher, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (H. B. Ledman and Joseph Schimmel, both of Washington, D. C., of counsel), for Commissioner of Patents.

Before BLAND, Acting Presiding Judge, and HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner finally rejecting claims 1 and 2 of an application for a patent for "Improvements in Thermoplastic Resins."

The involved claims read as follows:

1. As a product, a thermoplastic resin comprising polymerized nuclear-substituted dichlorstyrene, said nuclear-substituted dichlorstyrene in its monomeric form having a density of from $D_4^{25} = 1.236$ to $D_4^{25} = 1.280$ and an index of refraction of from $N_D^{25} = 1.5724$ to $N_D^{25} = 1.5838$.—.

2. As a product, a thermoplastic resin comprising copolymerized mixed isomeric nuclear-substituted dichlorstyrenes, said nuclear-substituted dichlorstyrenes in their monomeric form having a density of from $D_4^{25} = 1.236$ to $D_4^{25} = 1.280$ and an index of refraction of from $N_D^{25} = 1.5724$ to $N_D^{15} = 1.5838$.—

No claims were allowed.

The following references were relied upon by the examiner:

Dykstra, 1,890,772, December 13, 1932; Dreisbach, 2,110,829, March 8, 1938; Britton et al., 2,255,729, September 9, 1941;

Dreisbach et al., 2,295,077, September 8, 1942.

It will be observed from a reading of the claims that the application relates to thermoplastic resin comprising polymers or copolymers of one or more of the nuclear-substituted dichlorostyrenes which are analogues of styrene.

In the decisions below and in appellant's brief dichlorostyrene is referred to throughout as dichlorostyrene, so it is our assumption that the terms are synonomous and they will be so considered by us.

The Dreisbach reference, 2,110,829, concerns an improved method of producing styrene and its homologues or analogues by pyrolysis of corresponding alkylated aromatic hydrocarbon or its analogue. It expressly sets out the producing of "2.4-dichlorostyrene" from pyrolysis of "2.4 dichloro-ethylbenzene." The "2.4 dichlorostyrene" is stated in the brief of the solicitor to be "a nuclear-substituted dichlorostyrene" and this is not controverted by appellant.

It is stated in the patent that " * * * the styrene or analogues thereof may be converted to a resin without first being separated from the reaction mixture as an individual compound" and that conversion is made by a method wherein "ethylbenzene or other alkylated hydrocarbon" is pyrolyzed. Method claim 10 of the patent discloses the use of an organic starting material which may contain " * * * halogen substituents in the aromatic nucleus * * * " which, when subjected to pyrolysis, results in a solution of styrene or one of its analogues, which embraces the nuclear-substituted dichlorostyrene of the patent, above mentioned. The method of claim 10 causes the compound styrene, or an analogue such as dichlorostyrene, to polymerize to form a resin.

The Dreisbach et al. patent, 2,295,077, discloses the production of ortho-para-dichloro-styrene. It is not disputed that that product is a nuclear-substituted dichlorostyrene and it is produced by the process of pyrolysis of the corresponding ethyl dichlorbenzene.

It was held below that the patent teaches that dichlorostyrene and other analogues of

styrene shown therein are polymerizable. That holding is based upon a statement in the patent that "It sometimes is desireable to have present in the reacting mixture an agent which will inhibit polymerization of the vinyl-aromatic process and that such agent may be used in practicing the invention."

The examiner rejected the claims as unpatentable over either of the Dreisbach patents or the patent to Dykstra. The Britton et al. patent was cited because of the reference contained therein to the polymerization and copolymerization of various styrenes, including monochloro styrenes, copolymerization with the vinyl compound, divinyl benzene being particularly referred to.

The board in its decision held that the Dykstra patent " * * * does not disclose nuclear-substituted dichlorostyrene with sufficient certainty to warrant the rejection * * *." It is, therefore, not necessary to discuss that patent. The board affirmed the decision of the examiner in all other respects and also made reference to "The Chemistry of Synthetic Resins," Ellis, 1935, Vol. I, page 257.

Appellant contends in his brief that his discovery goes much further than the mere finding that nuclear dichlorostyrene of the purity to meet the specifications recited in the rejected claims are polymerizable and copolymerizable. He states that the polymers and copolymers of many polymerizable materials are in liquid, semi-solid, or solid forms of widely divergent properties, many of which are wholly without utility. His assertion of invention, it seems, is grounded on the alleged additional discovery " * * * that nuclear-substituted dichlorostyrenes in monomeric form, *if of sufficient purity to meet the specifications recited in appellant's claims 1 and 2* will readily polymerize and copolymerize *to form valuable thermoplastic resins* that are hard and tough and which are *greatly superior* to other thermoplastic resins as regards a considerable number of their physical and chemical properties." (Italics quoted.)

The examiner held that the polymerizability of styrene compounds is notorious,

being accomplished by more standing in some cases, and that the mere existence of a nuclear-substituted dichlorostyrene such as disclosed in both Dreisbach patents as a monomeric material suggests the existence of the polymer.

In order to refute that statement appellant referred to two Levine patents, 2,290,758 and 2,290,759. Those patents disclose trichlorostyrene and tetrachlorostyrene which do not tend to polymerize under the influence of light and heat. It was held below that merely because trichlorostyrene and tetrachlorostyrene do not polymerize would not imply invention in the discovery that dichlorostyrene is polymerizable. It was in this connection that the board cited the work by Ellis, supra, and stated that from that work it is known that the substitution in the benezene nucleus of styrene yields compounds of the same polymerizing tendency as styrene itself and such polymerization may be even more pronounced in the compounds.

The board reasoned that that fact being known there is no invention in discovering that nuclear-substituted dichlorostyrene is polymerizable, particularly as the Dreisbach patents indicate that it is. Those patents do not mention trichlorostyrene or tetrachlorostyrene, but, in our opinion, they clearly indicate that nuclear-substituted dichlorostyrenes are polymerizable.

Several affidavits to sustain appellant's contention were filed. In substance it is stated therein that the processes of the Dreisbach patents do not produce monomeric dichlorostyrene sufficiently pure to meet the density and index of refraction recited in the claims or to polymerize, although it is not said that the processes of the patents are incapable of producing the nuclear-substituted dichlorostyrenes mentioned therein. The board considered the affidavits insufficient to overcome the definite naming in those patents of dichlorostyrene and the indication that it is polymerizable. In this connection the solicitor in his brief cites In re Von Braemer, 127 F.2d 149, 29 C.C.P.A. (Patents) 1018.

With respect to the experiments described in the affidavits it must be said that in a patent it is to be presumed that a

process, if used by one skilled in the art, will produce the product alleged by the patentee and such presumption is not overcome by a mere showing that it is possible to operate within the disclosure without obtaining the alleged product. Skilled workers would as a matter of course, in our opinion, if they do not immediately obtain desired results, make certain experiments and adaptations and we agree with the argument of the solicitor that it is not a difficult matter to carry out a process in such fashion that it will not be successful and, therefore, the failures of experimenters who have no interest in succeeding should not be accorded great weight, citing Bullard Company et al. v. Coe, 79 U.S.App.D. C. 369, 147 F.2d 568. Possibly more extensive experiments than were made by the affiants herein might have produced a different result.

It is clear to us that both the Dreisbach patents teach the process of preparing resin products such as will satisfy the limitations of the appealed claims. In those patents polymerization of various analogues of styrene, including nuclear-substituted dichlorostyrene, is described and we do not believe that the specific ranges for the density and index of refraction of the monomer result in patentable distinctions over such art.

With respect to claim 2, which calls for a copolymerizer mixture of isomer nuclear-substituted styrenes, it seems to us, as was held below, that since polymerization of one such substance is disclosed by the prior art, there is no invention in copolymerizing a mixture of any two or more such compounds. It is to be naturally expected that such mixture would copolymerize in similar fashion even as would a monomer. Furthermore, it was noted by the tribunals below, and we think properly so, that the Britton reference discloses a practice of copolymerizing a mixture related to styrenes and similar compounds.

For the reasons stated herein, the decisions of the Board of Appeals is affirmed.

Affirmed.

By reason of illness, GARRETT, Presiding Judge, was not present at the argument of this case and did not participate in the decision.