Kenneth E. LYMAN, Appellant,

v.

David L. LADD, Commissioner of Patents,
Appellee.

No. 18935.

United States Court of Appeals
District of Columbia Circuit.

Argued April 14, 1965.

Decided May 6, 1965.

Mr. Edwin S. Booth, Chicago, Ill., with
whom Messrs. N. D. Parker, Jr., Wash-
ington, D. C., and James F. Davis, Chi-
cago, Ill., were on the brief, for appellant.

Mr. Joseph F. Nakamura, Atty., United
States Patent Office, with whom Mr. Clar-
ence W. Moore, Sol., was on the brief, for
appellee.

Before BAZELON, Chief Judge, and
WRIGHT and McGOWAN, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge.

After a trial *de novo* pursuant to 35
U.S.C. § 145, the District Court affirmed
the action of the Patent Office denying
appellant's patent application. Appellant
alleges trial court error in failing to per-
ceive that the gist of his invention is the
"mathematical apportionment"[1] of auto-

---

1. Appellant's brief, at p. 5, reads:
   "The elements of the above-described
   assembly are old and appellant takes
   no position to the contrary (JA 67).
   Appellant's invention, and the point
   of novelty on which appellant predi-
   cates patentability, is the invention or
   discovery of a specific relationship be-
   tween the frequency of the spring ele-

ment and the gravity induced rate of
downward movement of the mechanical
elements of the system such that the
wheel and the spring move downward
through the same distance in the same
time interval without creating un-
balanced forces. This appellant calls
'mathematical apportionment.'"

motive wheel suspension elements shown in his patent application, and not the wheel suspension elements themselves. He insists that his invention defines "an intangible relationship, independent of specific structure," and that the trial court's finding of obviousness within the meaning of 35 U.S.C. § 103 [2] resulted from its failure to recognize this distinction. Appellant readily concedes that the structural elements shown in his patent application to demonstrate the intangible relationship have been in the public domain for many years and are particularly described in the Metz patent which was cited as prior art by the Patent Office in denying his application. His invention, however, according to appellant, "lies in a concept; namely, mathematical apportionment."

Initially, it may be seriously questioned whether a "concept," [3] an "intangible relationship," [4] or even a "mathematical apportionment" [5] is patentable. Certainly naked ideas, independent of the means to carry them out, are not patentable. Atlantic Works v. Brady, 107 U.S. (17 Otto) 192, 2 S.Ct. 225, 27 L.Ed. 438 (1882). And where, as here, the structure used to demonstrate the concept is old in the art, no basis for the issuance of a patent is shown. Compare The Telephone Cases, 126 U.S. 1, 533, 8 S.Ct. 778, 31 L.Ed. 863 (1887). It is true, of course, that a process is patentable under 35 U.S.C. § 101. [6] But appellant does not even suggest that his invention quali-

fies for a process patent. See Cochrane v. Deener, 94 U.S. (4 Otto) 780, 788, 24 L.Ed. 139 (1876).

Moreover, appellant's contention that the District Court misconceived the nature of his invention is not supported by this record. The District Court, like the Patent Office Board of Appeals and the Patent Examiner, held that appellant's alleged invention was anticipated by Metz. Although Metz does not use the term "mathematical apportionment," the principle is clearly disclosed in his invention. As the District Court stated: "The Metz patent describes a suspension arrangement which is predicated upon these very same mathematical relationships [appellant's equal rates of downward movement of the spring and the linkage]." Lyman v. Ladd, D.D.C., 232 F. Supp. 754, 756 (1964). Continuing, the District Court added: "In any event, it certainly cannot be said that the mathematical relationship would have been unobvious to a person ordinarily skilled in the art with the Metz patent to guide him." *Ibid.*

This court has frequently stated that "the findings of the Patent Office, an expert administrative body, especially when confirmed by the District Court, will not be overturned here unless clearly infected with error." Zenith Radio Corporation v. Ladd, 114 U.S.App.D.C. 54, 57, 310 F.2d 859, 862 (1962). The fact that appellant, testifying in the District Court as his own expert witness,[7] was

---

**2.** 35 U.S.C. § 103 reads:
"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

**3.** See Westinghouse Elec. & Mfg. Co. v. Powerlite Switchboard Co., 6 Cir., 142 F.2d 965 (1944).

**4.** See In re Kothny, 96 F.2d 289, 25 CCPA (Patents) 1067 (1938).

**5.** Compare Application of Shao Wen Yuan, 188 F.2d 377, 38 CCPA (Patents) 967 (1951).

**6.** 35 U.S.C. § 101 reads:
"Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."

**7.** There were no other witnesses.

unimpressed with the Metz patent and challenged its viability as an anticipatory reference [8] would not in itself require the District Court to reverse the action of the Patent Office. The District Court weighed appellant's expert testimony against the record compiled in the Patent Office and found his expert testimony wanting. Its assessment of the credibility of that expert testimony is entitled to "due regard" by this court. Rule 52(a), FED.R.CIV.P.

Affirmed.

---

8. Appellant, citing Bullard Co. v. Coe, 79 U.S.App.D.C. 369, 147 F.2d 568 (1945), opined that the structure described in the Metz patent would not work and was, therefore, without anticipatory significance.